## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BLUEFIELD DIVISION

**BENJAMIN TILLMAN,**                                )
                                                     )
            **Plaintiff,**                           )
                                                     )
**v.**                                               )        **Civil Action No. 1:20-00063**
                                                     )
**UNIT MANAGER B. HUFFMAN,** *et al.*,               )
                                                     )
            **Defendants.**                          )

## PROPOSED FINDINGS AND RECOMMENDATION

On January 27, 2020, Plaintiff, acting *pro se*,[1] filed his Motion to Proceed Without

Prepayment of Fees and Costs and a Complaint for alleged violations of his constitutional and

civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>,

403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document Nos. 1 and 2.) In his Complaint

and Memorandum in Support, Plaintiff names the following as Defendants: (1) Unit Manager B.

Huffman, A-2 Unit; (2) Warden C. Maruka; (3) Regional Director D.J. Harmon, Central Office;

(4) Ian Connors, BOP Director; and (5) Kathleen Sawyer-Hawk, National Inmate Appeals.

(Document Nos. 2 and 3.) Specifically, Plaintiff alleges that Defendant Huffman violated

Plaintiff's Eighth Amendment rights by "harassing and retaliating against Plaintiff for utilizing

the grievance system." (Document No. 3, p. 4.) Plaintiff claims that Defendants Maruka,

Harman, Sayer-Hawk, and Connors have "covered and secured this violation by not investigating

and adjudicating this matter resulting in sanctions and damages where good cause shows." (<u>Id.</u>)

Plaintiff states he notified "the Regional Office of the harassment and retaliation he was

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

suffering from Unit Manager B. Huffman," but "the Regional Office failed to investigate, adjudicate, and/or accept this complaint." (Id., p. 5.) Plaintiff states that he accepted the Regional Office's rejection of this grievance as a "sensitive" matter and he filed a BP-9 with Defendant Maruka. (Id.) Plaintiff, however, complains that Defendant Maruka "adjudicated this matter without any investigation, interview, or factual findings." (Id.) Next, Plaintiff states that he appealed the denial of his BP-9 to the Regional Office. (Id.) Plaintiff alleges that his appeal was rejected because the Regional Office "fabricated a rejection notice by lying, stating Plaintiff 'did not provide a copy of the BP-9 Form or a copy of the BP-9 Response from the Warden.'" (Id.) Finally, Plaintiff alleges that he proceeded to seek relief from the Central Office "after being aware of the cover-up." (Id.) Plaintiff complains that the Central Office "further attempted to give Plaintiff the merry-go-round where Plaintiff had already been." (Id.)

As Exhibits, Plaintiff attaches the following: (1) A copy of Plaintiff's "Request for Administrative Remedy" dated August 10, 2019 complaining that Unit Manager Huffman was conducting cell inspections to harass and retaliate against Plaintiff for filing administrative remedies (Remedy ID No. 990274-A1 and R1) (Document No. 3-1, pp. 1 - 3.); (2) A copy of pertinent pages from the "Inmate Admission & Orientation Handbook" (Id., pp. 4 – 5.); (3) A copy of Plaintiff's "Request for Administrative Remedy" dated September 19, 2019, again complaining that Unit Manager Huffman was conducting cell inspections to harass and retaliate against Plaintiff for filing administrative remedies (Remedy ID No. 993973-F1) (Id., pp. 6 - 7.); (4) A copy of Warden Maruka's Response dated October 30, 2019, finding no evidence to support Plaintiff's claim of harassment or retaliation (Remedy ID No. 993973-F1) (Id., p. 8.); (5) A copy of Plaintiff's "Regional Administrative Remedy Appeal" dated November 8, 2019

2

(Remedy ID No. 993973-A1)[2] (Id., pp. 9 - 11.); (6) A copy of a "Rejection Notice –
Administrative Remedy" dated November 21, 2019, from the Administrative Remedy
Coordinator from the Mid-Atlantic Regional Office concerning Remedy ID No. 990274-R2
stating that Plaintiff "did not provide a copy of [his] institution Administrative Remedy Request
(BP-9) form or a copy of the (BP-9) Response from the Warden" (Id., p. 12.); (7) A copy of
Plaintiff's Appeal to the Central Office submitted on December 5, 2019, complaining that the
Regional Office failed to "adjudicate" his claim and "frivolously" rejected his appeal (Id., p.
13.); (8) A copy of a "Rejection Notice – Administrative Remedy" dated January 6, 2020, from
the Administrative Remedy Coordinator from the Central Office regarding Remedy ID No.
990274-A1 stating that Plaintiff (i) submitted his request/appeal to the wrong level, (ii) it
concurred with the rational of the Regional Office for the rejection and Plaintiff should follow
directions provided on the prior rejection notice, and (iii) the appeal is related to Remedy ID No.
993973, Plaintiff should start at the institutional level so the Warden can address his concern (Id.,
p. 14.); (9) A copy of a "Rejection Notice – Administrative Remedy" dated January 6, 2020,
from the Administrative Remedy Coordinator from the Central Office regarding Remedy ID No.
993973-A1 stating that Plaintiff (i) submitted his request/appeal to the wrong level and should
have filed at the Regional Office level, and (ii) "now you have institutional response to
993973-F1, next step is attach to BP-10 and appeal to the Region (Id., p. 15.); (10) A copy of
Plaintiff's "Request for Administrative Remedy" dated September 26, 2019, again complaining

---

[2] Although Plaintiff filed his appeal using a "Regional Administrative Remedy Appeal" form, the
record reveals that Plaintiff's appeal was filed with the Central Office instead of the Regional
Office. Administrative remedy numbers identify at what level the remedy was filed and the
number of times the remedy was filed at that level. A remedy filed at the institution level is
identified by an F, at the Regional Office level an R, and at the Central Office level an A. An
initial remedy filed at the institution level is assigned an F1. If the administrative remedy is
rejected and re-filed at the institutional level, the re-filed remedy is identified as F2. The same

that Unit Manager Huffman was conducting cell inspections to harass and retaliate against Plaintiff for filing administrative remedies (Remedy ID No. 994207-A1 and R1) (Id., pp. 16 – 18.); and (11) A copy of a "Rejection Notice – Administrative Remedy" dated January 6, 2020, from the Administrative Remedy Coordinator from the Central Office regarding Remedy ID No. 994207-A1 stating that Plaintiff (i) submitted his request/appeal to the wrong level, (ii) it concurred with the rational of the Regional Office for the rejection and Plaintiff should follow directions provided on the prior rejection notice, and (iii) the appeal is related to Remedy ID No. 993973, Plaintiff should start at the institutional level so the Warden can address his concern (Id., p. 19.).

On May 26, 2020, Plaintiff filed his Motion for Summary Judgment. (Document No. 11.) First, Plaintiff contends that he is entitled to summary judgment because there are no genuine issues of material fact and he is entitled to judgment as a matter of law. (Id.) Second, Plaintiff argues he is entitled to summary judgment because "this proceeding has been delayed for several months" and there is a continued violation of Plaintiff's constitutional rights. (Id.)

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827,

system is used for all three levels.

4

1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)). Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez,

5

504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va.
Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## ANALYSIS

1.    **Administrative Remedy Process:**

In his Complaint and Memorandum in Support, Plaintiff alleges that Defendants have
violated his constitutional rights by rendering the BOP's Administrative Remedy process
unavailable. (Document Nos. 2 and 3.) Federal inmates, however, have no constitutional right to
participate in the BOP's administrative grievance proceedings. See Adams v. Rice, 40 F.3d 72,
75 (4th Cir.), cert. denied, 514 U.S. 1022, 115 S.Ct. 1371, 131 L.Ed.2d 227 (1994); also see
Booker v. South Carolina Dept. of Corrections, 855 F.3d 533 (4th Cir. 2017)("*Adams* establishes
a clear rule: inmates have no constitutional entitlement or due process interest in access to a
grievance procedure."); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)("[T]he federal
regulations providing for an administrative remedy procedure do not in and of themselves create
a liberty interest in access to that procedure. When the claim underlying the administrative
grievance involves a constitutional right, the prisoner's right to petition the government for
redress is the right of access to the courts, which is not compromised by the prison's refusal to
entertain his grievance.") A BOP employee's refusal to respond to an inmate's administrative
complaint, or conduct that otherwise prevents an inmate from pursuing such complaints through
the administrative remedy process, making the process unavailable, is not actionable under
Bivens. Rather, the legal consequence of conduct which makes the administrative remedy
process unavailable to inmates is that the door to federal Court is open to proceedings on the
merits of their claims without requiring their exhaustion of administrative remedies.

6

Accordingly, the undersigned finds that Plaintiff's claim that Defendants violated his constitutional rights by rendering the BOP's Administrative Remedy process unavailable should be dismissed. Notwithstanding the foregoing, the undersigned will briefly consider the merits of Plaintiff's claim.

Although Plaintiff claims that the Defendants are refusing to properly consider his administrative remedies and creating a "merry-go-round" process, Plaintiff's allegations and supporting Exhibits reveal Plaintiff's claim is without merit. A review of Plaintiff's Complaint and Exhibits reveal that Plaintiff has not properly proceeded through the administrative process. Plaintiff has filed multiple administrative remedies, but has failed to properly and fully pursue any of those remedies through the administrative process. The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director.[3] Id., §

---

[3] Section 542.14(d) provides as follows:

    If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the

542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In the instant case, Plaintiff indicates that he has filed three remedies: Remedy ID Nos. 990274, 993973, and 994207. Although Plaintiff may have attempted to fully exhaust these administrative remedies, the record clearly reveals that Plaintiff failed to follow proper procedure as to each remedy number. Concerning Remedy ID No. 990274, Plaintiff's Exhibits reveal that

---

institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator aggress that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate my pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

he submitted the remedy as a sensitive remedy to the Regional Office on August 10, 2019. (Document No. 3-1, pp. 1 – 3.) The Regional Office denied the remedy as sensitive and directed Plaintiff to pursue his claim with a BP-9 at the institutional level. (Id.) Plaintiff, however, filed an appeal with the Regional Office and such was rejected because Plaintiff had failed to file a BP-9 at the institutional level. (Id., p. 12.) Plaintiff then appealed to the Central Office, and his appeal was rejected because the Plaintiff (i) submitted his request/appeal to the wrong level, (ii) it concurred with the rational of the Regional Office for the rejection and Plaintiff should follow directions provided on the prior rejection notice, and (iii) the appeal is related to Remedy ID No. 993973, Plaintiff should start at the institutional level so the Warden can address his concern (Id., p. 14.)

Concerning Remedy ID No. 993973, Plaintiff's Exhibits reveal Plaintiff filed his Request for Administrative Remedy (BP-9) at the institutional level on September 1, 2019. (Id., pp. 6 – 7.) The Warden denied Petitioner's remedy request on October 30, 2019. (Id., p. 8.) On November 8, 2019, Plaintiff submitted his "Regional Administrative Remedy Appeal" to the Central Office. (Id., pp. 9 – 11.) Although Plaintiff filed his appeal using a "Regional Administrative Remedy Appeal" form, the record reveals that Plaintiff's appeal was filed with the Central Office instead of the Regional Office. The Central Office rejected his appeal on January 6, 2020, finding that Plaintiff (i) submitted his request/appeal to the wrong level and should have filed at the Regional Office level, and (ii) "now you have institutional response to 993973-F1, next step is attach to BP-10 and appeal to the Regional Office. (Id., p. 15.)

Concerning Remedy ID No. 994207, Plaintiff's Exhibits reveal that he submitted the remedy as a sensitive remedy to the Regional Office on August 29, 2019. (Id., pp. 16 – 18.) The

Regional Office denied the remedy as sensitive and Plaintiff then appealed to the Central Office. (Id., p. 19.) The Central Office rejected Plaintiff's appeal on January 6, 2020, because the Plaintiff (i) submitted his request/appeal to the wrong level, (ii) it concurred with the rational of the Regional Office for the rejection and Plaintiff should follow directions provided on the prior rejection notice, and (iii) the appeal is related to Remedy ID No. 993973, Plaintiff should start at the institutional level so the Warden can address his concern (Id., p. 19.). Accordingly, the face of Plaintiff's Complaint and Exhibits reveal that Plaintiff failed to follow proper BOP procedure concerning each of his administrative remedies. In rejecting Plaintiff's administrative appeals, the BOP provided Plaintiff with correct instructions as to how to properly proceed. Plaintiff, however, incorrectly perceived such as "frivolous" denials creating a "merry-go-round" process, and instead, instituted this action.

**2.    Eighth Amendment:**

In his Complaint and Memorandum in Support, Plaintiff alleges a violation of his rights under the Eighth Amendment. (Document Nos. 2 and 3.) As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60

L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991); also see King v. Rubenstein, 825 F.3d 206, 218 (4th Cir. 2016)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993))("[T]o make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"); Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)(explaining that the above requirements "spring from the text of the amendment itself; absent intentionality, a condition imposed upon an inmate cannot properly be called

'punishment,' and absent severity, a punishment cannot be called 'cruel and unusual.'") To satisfy the objective component, Plaintiff must show that the challenged condition caused or constituted an extreme deprivation. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). To demonstrate an "extreme deprivation," a plaintiff "must allege a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from [his] exposure to the challenged conditions." Odom v. South Caroline Dept. of Corrections, 349 F.3d 765, 770 (4th Cir. 2003); also see Wilson v. Seiter, 501 U.S. at 298, 111 S.Ct. at 2321(A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities."); White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In Strickler, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") To satisfy the subjective component, Plaintiff must demonstrate a "deliberate indifference" to his health and safety by Defendants. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware of the excessive risk to Plaintiff's health or safety and each Defendant disregarded that risk.

Plaintiff contends that the conditions of his confinement at FCI McDowell are cruel and unusual because Defendant Huffman is subjecting Plaintiff to harassment by conducting cell inspections. (Document Nos. 2, 3, and 3-1.) Assuming Plaintiff's allegations as true, Plaintiff has

failed to state a constitutional claim. First, Plaintiff fails to allege that he was incarcerated under conditions imposing a substantial risk of serious harm. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each Defendant was consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that each Defendant knew of and disregarded an excessive risk to his health or safety. Furthermore, Plaintiff does not indicate that he suffered any serious injury as a result of Defendant Huffman's alleged harassment. Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim under the Eighth Amendment for which relief can be granted.

**3.     Retaliation Claim:**

Finally, Plaintiff appears to argue that Defendant Huffman violated his constitutional rights by retaliating against Plaintiff for pursuing his administrative remedies. (Document Nos. 2 and 3.) Specifically, Plaintiff argues that Defendant Huffman improperly subjected him to cell inspections. (Id.) A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Bivens core premise is to deter individual officers' unconstitutional acts. Correctional Services Corp v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001)(declining to extend Bivens to confer a right of action for damages against private entities acting under the color of federal law). In Bivens, the Supreme Court first recognized that a victim of a Fourth Amendment violation by federal officers may bring suit for money damages against the officers in federal court. Bivens, 403 U.S. at 396, 91 S.Ct. 1999. In the years

13

following the decision in <u>Bivens</u>, the Supreme Court recognized an implied damages remedy under the Due Process Clause of the Fifth Amendment, <u>Davis v. Passman</u>, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979), and the Cruel and Unusual Punishments Clause of the Eighth Amendment, <u>Carlson v. Green</u>, 446 U.S. 14, 100, S.Ct. 1468, 64 L.Ed.2d 15 (1980). Since <u>Carlson</u>, the Supreme Court has consistently refused to extend <u>Bivens</u> liability to any new context or new category of defendants. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. at 484-86, 114 S.Ct. 996 (declined to extend <u>Bivens</u> to permit suit against a federal agency); <u>Holly v. Scott</u>, 434 F.3d 287, 290 (4th Cir. 2006)(declining to extend <u>Bivens</u> to an Eighth Amendment claim against employees of a privately operated prison); <u>Lebron v. Rumsfeld</u>, 670 F.3d 540 (4th Cir. 2012)(declining to extend <u>Bivens</u> in a military context). In 2017, the Supreme Court made clear the very limited scope of <u>Bivens</u> actions and that "expanding the <u>Bivens</u> remedy is now a disfavored judicial activity." <u>Ziglar v. Abbasi</u>, ___ U.S. ___, 137 S.Ct. 1843, 1857, 198 L.Ed.2d 290 (2017). If the asserted <u>Bivens</u> claim is not one of the three <u>Bivens</u>-type actions previously recognized by the Supreme Court, closer scrutiny is required. <u>Id.</u>

In <u>Abbasi</u>, the Supreme Court set out a framework for determining whether a claim presents a "new <u>Bivens</u> context." <u>Abbasi</u>, 137 S.Ct. at 1860. As stated above, the Supreme Court has recognized a <u>Bivens</u> remedy in only three cases: (1) A Fourth Amendment claim against federal agents for violating the prohibition against unlawful searches and seizures when they handcuffed a man in his home without a warrant; (2) A Fifth Amendment general discrimination claim against a congressman for firing his female administrative assistant; and (3) An Eighth Amendment claim brought by an inmate's estate against prison officials for failure to provide adequate medical care for his asthma. <u>Id.</u> at 1854-55(citations omitted). The <u>Abbasi</u> Court

explained that "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." Id. at 1859. Although the Abbasi Court did not provide "an exhaustive list of differences that are meaningful enough to make a given context a new one," the Court did provide the following "instructive" examples:

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

Id. at 1859-60. In the instant case, Plaintiff appears to allege that Defendant Huffman retaliated against him for submitting administrative remedies in violation of his First Amendment rights. The mere fact that Plaintiff alleges a violation of a constitutional right does not conclusively establish that Bivens extends to Plaintiff's constitutional claim. Thus, the undersigned must first determine whether Plaintiff's retaliation claim presents "a new Bivens context."

The Supreme Court has "never held that *Bivens* extends to First Amendment claims." Reichle v. Howards, 566 U.S. 658, 132 S.Ct. 2088, n. 4, 182 L.Ed.2d 985 (2012)("We have never held that Bivens extends to First Amendment claims."); also see Correctional Services Corporation v. Malesko, 534 U.S. 61, 67-68, 22 S.Ct. 515, 519-20, 151 L.Ed.2d 456 (2001)(noting that "we declined to create a *Bivens* remedy against individual Government officials for a First Amendment violation arising in the context of federal employment"); Bush v. Lucas, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983)("we have not found an implied damages remedy under the Free Exercise Clause"); Leibelson v. Collins, 2017 WL 6614102, * 8 (S.D.W.Va. Dec. 27, 2017)(J. Berger)("[I]t is not clear that *Bivens* may be extended to First

Amendment claims."). In Ashcroft v. Iqbal, the Supreme Court stressed that "we have declined to extend Bivens to a claim sounding in the First Amendment." Iqbal, 556 U.S. at 676, 129 S.Ct. at 1948. The Iqbal Court, however, noted that it assumed without deciding that respondent's First Amendment claim was actionable under Bivens because petitioners did not assert the above argument. Id.; also see Wood v. Moss, ___ U.S. ___, 134 S.Ct. 2056, 2067, 188 L.Ed.2d 1039 (2014)("[W]e have several times assumed without deciding that Bivens extends to First Amendment claims. We do so again in this case.") The undersigned further acknowledges that just prior to the Supreme Court's decision in Abbasi, the Fourth Circuit clarified that inmates have a clearly established First Amendment right to file prison grievances free from retaliation. See Martin v. Duffy, 858 F.3d 239 (4th Cir. June 1, 2017)("this Court held that an inmate's 'right to file a prison grievance free from retaliation was clearly established under the First Amendment' at least as far back in time as 2010")(citing Booker v. South Carolina Department of Corrections, 855 F.3d 533, 545 (4th Cir. April 28, 2017)). Importantly, both Martin and Booker were Section 1983 actions and the issue of whether Bivens extends to the First Amendment was not addressed by the Fourth Circuit. Id. Subsequently, the Fourth Circuit issued an unpublished opinion in Patton v. Kimble reversing a district court's dismissal of an inmate's Bivens action alleging a First Amendment retaliation claim. Patton v. Kimble, 717 Fed.Appx. 271 (4th Cir. 2018). The Fourth Court determined that the district court erred in finding that the inmate failed to state a First Amendment retaliation claim in light of its decision in Booker. Id. at 271-72. The Fourth Circuit, however, did not address the issue of whether Bivens extends to the First Amendment. Id. Based upon the foregoing, the undersigned finds that Plaintiff's First Amendment retaliation claim presents a new Bivens context.

16

Next, the Court must determine whether <u>Bivens</u> should be extended to the above new context. First, the Court should consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new freestanding remedy in damages." <u>Wilkie</u>, 551 U.S. at 550, 127 S.Ct. 2588. "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." <u>Abbasi</u>, 137 S.Ct. at 1865("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action."); <u>Malesko</u>, 534 U.S. at 69, 122 S.Ct. at 515("So long as the plaintiff had an avenue for some redress," a court may decline to provide a new <u>Bivens</u> remedy). Alternative remedies can include administrative, statutory, equitable, and state law remedies. First, the undersigned finds that Plaintiff had alternative remedies available to him through the BOP administrative remedy program. The BOP administrative remedy program allows inmates to seek formal review of issues relating to any aspect of his or her confinement. Second, to the extent Plaintiff alleges that retaliation resulted in the filing of false incident reports, Plaintiff could have sought review of such incident reports pursuant to 28 C.F.R. § 541.7(i). Third, any retaliation that may have resulted in an extension of Plaintiff's confinement (such as disciplinary action resulting in the loss of good time credit) would be actionable in *habeas corpus* pursuant to 28 U.S.C. 2241. Finally, if Plaintiff is being subjected to ongoing retaliation, he could seek injunctive relief. <u>See</u> 18 U.S.C § 3626(a)(2); <u>also see</u> <u>Malesko</u>, 534 U.S. at 74, 122 S.Ct. at 523(stating that "unlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means' for preventing entities from acting unconstitutionally"); <u>Bell v. Hood</u>, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946)(recognizing the "jurisdiction

of federal courts to issue injunctions to protect rights safeguarded by the Constitution"). Thus, the undersigned finds that Plaintiff has alternative remedies available to address his allegations of retaliation. See Vega v. United States, 881 F.3d 1146, 1154 (9th Cir. 2018)(finding the inmate had alternative remedies available to address his First Amendment retaliation claim via the BOP's administrative remedy process, review of the incident report pursuant to Section 541.7, and under state law); Reid v. United States, 2018 WL 1588264, * 2 (E.D.Cal. April 2, 2018)(finding inmate had alternative remedies available through the BOP's administrative remedy program, under the Federal Tort Claims Act, a Section 2241 petition for writ of *habeas corpus*, and Bivens to the extent that any alleged retaliation took the form of conduct that has already been determined by the Supreme Court to be actionable under Bivens); Muhammad v. Gehrke, 2018 WL 1334936, * 4 (S.D.Ind. March 15, 2018)(finding inmate had alternative remedies available through the BOP's administrative remedy program, *habeas corpus*, and Bivens to the extent that any alleged retaliation took the form of conduct that has already been determined by the Supreme Court to be actionable under Bivens); Gonzalez v. Hasty, 269 F.Supp.3d 45, 60 (E.D.N.Y. Sept. 18, 2017)(finding that inmate had two alternative remedies, the filing of administrative complaints and a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2241); Andrews v. Miner, 2017 WL 7688266, * 4 (N.D.Ala. Aug. 25, 2017)(finding that the inmate had alternative remedies via the filing of a Bivens claim for excessive force, the BOP's administrative remedy process, and under the Federal Tort Claims Act).

Irrespective of whether an alternative remedy exists, a Bivens remedy should not be extended where "there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Abbasi, 137 S.Ct. at 1857(quoting Carlson, 446 U.S at 18, 100 S.Ct.

1468). Although the Supreme Court has not defined what constitutes "special factors counselling hesitation," the Court has observed that "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Id. at 1857-58. Put simply, "a factor must cause a court to hesitate before answering that question in the affirmative." Id. at 1858. "[L]egislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Id. at 1865. The Abassi Court explained that since Congress did not provide for a standalone damages remedy against federal jailers when it passed the Prison Litigation Reform Act ["PLRA"], "[i]t could be argued that this suggest Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." Id. The Supreme Court explained as follows:

> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.

Id. The PLRA's exhaustion requirement clearly applies to Bivens actions. Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The Supreme Court has further recognized that in enacting the PLRA, Congress intended to "reduce the quantity and improve the quality of prisoner suits." Jones v. Bock, 549 U.S. 199, 203-04, 127 S.Ct. 910, 1666 L.Ed.2d 798 (2007)(citing Porter v. Nussle, 534 U.S. at 524, 122 S.Ct. at 983). Additionally, the Supreme Court has stated that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." Turner v. Safely, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)(citation omitted). The Supreme Court explained that "[r]unning a prison is an

19

inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Id. Since prison administration is a task that has been committed to the responsibility of the legislative and executive branches of government, the Supreme Court has stated that "separation of powers concerns counsel a policy of judicial restraint." Id., 482 U.S. at 85, 107 S.Ct. at 2259. Thus, the foregoing supports a finding that Congress has been active in creating legislation regarding prisoner litigation and such causes the undersigned hesitation as to expanding Bivens to Plaintiff's First Amendment retaliation claim. See Reid, 2018 WL 1588264 at * 3(finding Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens claim); Gehrke, 2018 WL 1334936 at * 4(same); Gonzalez, 269 F.Supp.3d at 61(same).

Furthermore, the Abbasi Court explained that "the decision to recognize a damage remedy requires an assessment of its impact on governmental operations systemwide." Abbasi, 137 U.S. at 1858. The impact on governmental operations systemwide include "the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself when the tort and monetary liability mechanisms of the legal systems are used to bring about the proper formulation and implementation of public policies." Id. The Supreme Court has emphasized that "'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." Wilkie, 551 U.S. at 562, 127 S.Ct. 2588(quoting Bush, 462 U.S at 389, 103 S.Ct. 2404). In Abbasi, the Supreme Court further explained as follows:

> Claims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should

> be imposed upon individual officers and employees of the Federal Government.
> In addition, the time and administrative costs attendant upon intrusions resulting
> from the discovery and trial process are significant factors to be considered.

Abbasi, 137 U.S. at 1856. The undersigned notes that expanding Bivens to allow a First Amendment retaliation claim by inmates would clearly result in an increase of suits by inmates. This increase in suits would result in increased litigation costs to the Government and impose a burden upon individual employees to defend such claims. A First Amendment retaliation claim requires an inquiry into a defendant's subjective state of mind, which often results in an issue of material fact that cannot be resolved at the dispositive motion stage. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)(en banc)(citations omitted)(An inmate's claim of retaliation must be treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."). The consequence of the existence of an issue of material fact is the need for a trial, which results in further litigation costs to the Government. See Gonzalez v. Bendet, 2018 WL 1524752, * 4 (S.D.S.D. March 28, 2018)(finding "that the cost, time, and energy associated with defending a Bivens action brought by an inmate for an action based on retaliation under the First Amendment against a federal employee are significant" and constitute a special factor counselling hesitation); Andrews, 2017 WL 7688266, * 4 – 5(same). Accordingly, the undersigned finds there are special factors counselling hesitation as to the expansion of Bivens to a First Amendment retaliation claim. Based upon the foregoing, the undersigned respectfully recommends that the District Court find that Plaintiff has failed to state a claim upon which relief cannot be granted.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and

accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion to Proceed Without Prepayment of Fees or Costs (Document No. 1), **DISMISS** Plaintiff's Complaint (Document No. 2), **DENY as moot** Plaintiff's Motion for Summary Judgment (Document No. 11), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Faber and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: May 28, 2020.

Omar J. Aboulhosn
United States Magistrate Judge

22